UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOSE FIGUEROA          :
                       :
    v.                 :   C.A. No. 09-496A
                       :
MICHAEL J. ASTRUE,     :
Commissioner of the Social Security :
Administration         :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on October 14, 2009 seeking to reverse the decision of the Commissioner.  On May 10, 2010, Plaintiff filed a Motion for an Order Reversing the Decision of the Commissioner.  (Document No. 8).  On June 10, 2010, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 9).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and Plaintiff's Motion for an Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED.

### I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on April 9, 2007 (Tr. 104-106, 109-115) alleging disability as of June 30, 2003.  Plaintiff was insured for DIB through September 30, 2004.  (Tr. 116).  The applications were denied initially.  (Tr. 59-66).  Plaintiff filed a Request for Review.  (Tr. 71).  On May 29, 2008, a Federal Reviewing Official issued a decision finding that Plaintiff was not disabled under the Act. (Tr. 48-58). Plaintiff subsequently requested an administrative hearing. (Tr. 74-78).

On April 7, 2009, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified.  (Tr. 20-47).  On May 18, 2009, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 4-19).  The decision became final on August 25, 2009 (Tr. 1-3) and a timely appeal was then filed with this Court.

### II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's finding that his asthma condition did not equal the asthma listing, was not adequately explained and is not supported by substantial evidence.

The Commissioner disputes Plaintiff's claim and asserts that the ALJ's Step 3 finding that Plaintiff's asthma did not meet or equal a listing is adequately supported by the record.

### III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

C. **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

D. **The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.     Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C.

§ 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.  Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was forty-five years old at the time of the ALJ hearing.  (Tr. 104).  Plaintiff completed the seventh grade (Tr. 129) and has past relevant work as a machine operator.  (Tr. 125).  Plaintiff alleges disability due to back pain, asthma and depression.  (Tr. 124).

On January 9, 2006, Plaintiff was seen at the Providence Community Health Center for complaints of asthma.  (Tr. 189-190).  Upon exam, Plaintiff had a normal neck and heart and normal breath sounds.  (Tr. 189).  Plaintiff was diagnosed with asthma, "slightly active."  (Tr. 190).

On October 9, 2006, Plaintiff was seen at Roger Williams Medical Center for complaints of shortness of breath and wheezing.  (Tr. 201-202, 207-208).  Upon exam, Plaintiff had a supple neck, sounds of wheezes in his lungs, a regular heart, a non-tender abdomen, normal x-ray images of the chest and no edema in the extremities or neurological deficits.  (Tr. 201, 207).  Plaintiff was diagnosed with bronchitis with bronchospasm.  (Tr. 202).  He was treated with oral medications and released.  (Tr. 201-202).

On February 4, 2007, Plaintiff was seen at Roger Williams Medical Center for complaints of shortness of breath. (Tr. 198-200, 206). Upon exam, Plaintiff had sounds of wheezes in his lungs, a regular heart, normal x-ray images of the chest and no edema in the extremities or neurological deficits. (Tr. 198, 200, 206). Plaintiff was diagnosed with acute asthma exacerbation. (Tr. 198).

On February 23, 2007, Plaintiff was seen at Rhode Island Hospital for complaints of asthma. (Tr. 311-321). Upon exam, Plaintiff had clear lungs, a regular and rhythmic heart, sounds of wheezes in his lungs, a non-tender abdomen, no tenderness in the extremities and a normal mood and affect. (Tr. 320). Plaintiff was diagnosed with asthma – acute exacerbation. Id.

On March 30, 2007, Plaintiff was seen at Rhode Island Hospital for complaints of asthma. (Tr. 301-308). Upon exam, Plaintiff had clear lungs, normal heart sounds, sounds of wheezes in his lungs, normal range of motion and no tenderness in the extremities, intact cranial nerves and no motor or sensory deficits. (Tr. 308). Plaintiff was diagnosed with asthma – acute exacerbation. Id.

On April 5, 2007, Plaintiff was seen at Rhode Island Hospital for a follow-up appointment. (Tr. 274-278). Upon exam, Plaintiff had good air movement in the lungs with occasional sounds of wheezes and a regular and rhythmic heart. (Tr. 274). Plaintiff reported improvement and was diagnosed with "clinically stable" asthma. Id.

On April 19, 2007, Plaintiff was seen at Rhode Island Hospital for a follow-up appointment. (Tr. 270-273). Upon exam, Plaintiff had clear lungs with sounds of scattered wheezes and a normal cardiac exam. Id. Plaintiff was diagnosed with stable asthma. (Tr. 273).

On May 24, 2007, Plaintiff was seen at Rhode Island Hospital for a follow-up appointment and reported that "his last asthma attack was over a month ago and he has been compliant with his medications. (Tr. 266-269). Upon exam, Plaintiff had clear lungs, a non-tender abdomen and no

edema in the lower extremities. (Tr. 266). Plaintiff was diagnosed with stable asthma. Id. Plaintiff also sought disability paperwork at that appointment, and the doctor indicated that she did "not feel comfortable at this time filling out the patient's disability forms" because she did "not know how severe his asthma is." (Tr. 266-267). Plaintiff was to return with the results of pulmonary function tests. Id.[1]

On August 30, 2007, Plaintiff was seen at Rhode Island Hospital for complaints of wheezing. (Tr. 259-262). Upon exam, Plaintiff had clear lungs, a regular and rhythmic heart, mild sounds of wheezes in his lungs, a non-tender abdomen and no edema in the extremities. Id. Plaintiff was diagnosed with nighttime wheezing. (Tr. 259). The doctor noted that it was unclear if Plaintiff's symptoms were due to asthma or GERD. Id.

On October 25, 2007, Plaintiff was seen at Rhode Island Hospital for complaints of wheezing. (Tr. 255-258). Upon exam, Plaintiff had mild to moderate sounds of wheezes in his lungs. Id. Plaintiff was diagnosed with asthma and released to follow-up in one to two months. Id.

On November 15, 2007, Dr. Daniel Regan performed a consultative examination of Plaintiff who complained of asthma and lower back pain. (Tr. 232-234). Upon exam, Plaintiff had intact range of motion of the neck; a regular heart; sounds of wheezes in the lungs; poor range of motion of the spine; an inability to touch his toes, walk on his heels and toes, squat, or stand without difficulty; fair range of motion in the extremities; intact motor strength; an unremarkable gait; intact sensation in the lower extremities and normal x-ray images of the chest and lumbar spine. (Tr. 233). Plaintiff was diagnosed with asthma, intermittent back pain and poor vision. (Tr. 233-234). Dr.

---

[1] The tests showed reduced FEV1 and FVC but not low enough to meet or approach meeting Listing 3.03(A).

Regan opined that Plaintiff should avoid activities performed in hot and dusty environments, requiring frequent lifting and bending and requiring fine visual acuity. Id.

On November 29, 2007, Plaintiff was seen at Rhode Island Hospital for complaints of shortness of breath. (Tr. 251-254). Upon exam, Plaintiff had a regular heart, sounds of wheezes in his lungs, a non-tender abdomen and no edema in the extremities. (Tr. 251). Plaintiff was diagnosed with asthma. Id.

On December 6, 2007, Dr. Erik P. Purins, a DDS physician, opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit each for six hours in an eight-hour workday; push and pull on an unlimited basis; frequently climb ramps and stairs, balance, kneel, crouch, and crawl; occasionally stoop and climb ladders, ropes and scaffolds; and tolerate less than concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation. (Tr. 238-239, 241).

On January 4, 2008, Plaintiff was seen at Rhode Island Hospital for complaints of wheezing. (Tr. 287-298). Upon exam, Plaintiff had clear lungs, a regular and rhythmic heart, sounds of wheezes in his lungs, intact cranial nerves, no motor or sensory deficits and x-ray images of the chest that revealed normal findings. (Tr. 296, 298). Plaintiff was diagnosed with an asthma attack and reported that he ran out of medicine three weeks earlier. (Tr. 293, 296).

On May 29, 2008, Plaintiff was seen at Rhode Island Hospital for a medication refill and for complaints of shortness of breath. (Tr. 349-350). Upon exam, Plaintiff had fair air movement in the lungs, a regular heart and no edema in the extremities. (Tr. 349). Plaintiff was diagnosed with asthma. (Tr. 350).

### A.     The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. The ALJ found that Plaintiff's asthma, lower back pain, alcohol dependence and depression are "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 12). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the "listed" impairments. Id. at 13. As to Plaintiff's asthma, the ALJ particularly noted that such condition failed to meet Listing 3.03 because Plaintiff had not experienced the requisite frequency of attacks or pulmonary obstruction. Id. The ALJ assessed that Plaintiff retained the RFC to perform work at the light exertional level with certain non-exertional limitations related to his mental impairments and environmental limitations related to his asthma. Id. at 14.[2] Based on this RFC and expert testimony from the VE, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other unskilled, light jobs existing in significant numbers in the economy. Id. at 18-19. Thus, the ALJ rendered a finding that Plaintiff is not disabled for Social Security purposes. Id. at 19.

### B.     The ALJ's Step 3 Finding is Supported by Substantial Evidence

Plaintiff focuses his appeal specifically on the ALJ's Step 3 finding. Although Plaintiff does not contest the ALJ's finding that he did not establish that he met the asthma listing (Listing 3.03), he contends that "the ALJ failed to consider adequately, to explain his reasoning and was lacking in medical support for his finding that [Plaintiff] did not 'equal' the asthma listing." (Document No. 8 at pp. 9-10).

---

[2] In particular, based on Dr. Purins' RFC assessment (Tr. 241), the ALJ found that Plaintiff must avoid extreme cold, extreme heat, humidity, fumes, odors, dust, gases and poor ventilation. (Tr. 14).

In order to receive disability benefits at Step 3, a claimant must establish to the ALJ that his condition meets or equals a listed impairment.  See Torres v. Sec'y of HHS, 870 F.2d 742, 745 (1st Cir. 1989).  The issue presented in his appeal is whether the ALJ's finding that Plaintiff's asthma does not medically equal Listing 3.03(B) has sufficient support in the administrative record.  "An impairment 'equals' a listed impairment when the set of symptoms, signs and laboratory findings in the medical evidence supporting the claimant 'are at least equivalent in severity' to the set of medical findings for the listed impairment."  Martinez Nater v. Sec'y of HHS, 933 F.2d 76, 77 (1st Cir. 1991).

A claimant's asthma meets Listing 3.03(B)[3] when he suffers attacks "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year."  Asthma attacks are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."

Plaintiff first argues that the ALJ did not adequately explain the basis for his conclusion that Plaintiff's asthma did not "equal" Listing 3.03(B).  While Plaintiff is correct that the ALJ did not do so specifically in the section of his decision addressing Step 3 (Tr. 13-14), any claimed error would be harmless since the ALJ thoroughly evaluated Plaintiff's asthma in other parts of his decision and such discussion and findings provide adequate support for his Step 3 finding.  See Bauslaugh v. Astrue, No. EDCV 09-1853-MLG, 2010 WL 1875800 at *3 (C.D. Cal. May 11, 2010) ("a well-developed discussion of the factual basis of a claimant's impairments elsewhere in a hearing decision

---

[3] Plaintiff does not argue that his asthma meets or equals Listing 3.03(A) (chronic asthmatic bronchitis).

may, under certain circumstances, support an unexplained finding of no medical equivalence at Step three.").

Here, in connection with his Step 5 analysis, the ALJ discussed Plaintiff's reported symptoms, including those related to his asthma, and concluded that Plaintiff's allegations are not totally credible because the objective evidence does not support the elevated level of impairment alleged. (Tr. 15). Plaintiff does not challenge this credibility finding. The ALJ acknowledged Plaintiff's history of asthma and that he has experienced exacerbations but concluded that "there is little evidence that these episodes have not responded adequately to treatment with few residual effects." Id. The ALJ discussed the medical evidence of record regarding Plaintiff's asthma and then summarized his conclusion as follows:

> Overall, the claimant clearly experiences persistent respiratory deficits related to asthma. He has sought emergency treatment for exacerbations on a number of occasions. However, diagnostic testing has revealed few significant objective abnormalities. Pulmonary function testing was largely normal. Diagnostic imaging has revealed no acute pulmonary disease. Furthermore, he reported that his symptoms are not a problem during the day. His allegations of substantial respiratory impairment are not entirely supported by objective findings. He appears to be affected by generally moderate asthma. Accordingly, he retains the ability to perform light work. However, he must avoid extreme temperatures and humidity. He also much avoid fumes, odors, dust, gases, and poor ventilation.

(Tr. 16).

Although it is undisputed that Plaintiff regularly sought emergency treatment for asthma exacerbations in 2006 and 2007, Plaintiff has not shown that the treatment he received (primarily oral medications) was medically equivalent in intensity to that necessary to meet Listing 3.03(B). See Martinez Nater, 933 F.2d at 78-79 (finding medical equivalency where intravenous drug therapy

was required to restore normal breathing).  In addition, Listing 3.03(B) is defined as asthma attacks occurring "in spite of prescribed treatment" and, here, the record reflects that Plaintiff's episodes responded adequately to treatment and that several attacks resulted from failure to take his medication.  (See, e.g., Tr. 251, 266, 287, 293, 342, 349).

In addition, relying on S.S.R. 96-6p, Plaintiff argues that the ALJ erred in failing to obtain an updated medical opinion to support his Step 3 finding.  However, the Commissioner accurately points out that S.S.R. 96-6p provides that "[w]hen an [ALJ]...finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by [a Disability Determination and Transmittal Form] signed by a State agency medical...consultant."  See Nemoede v. Astrue, No. 2:05-CV-0129, 2008 WL 4332521 at *4 (N.D. Tex. Sept. 22, 2008).  Here, the record contains two such forms signed by Dr. Purins indicating that Plaintiff was not disabled by his asthma.  (Tr. 59, 60).  Plaintiff did not address this portion of S.S.R. 96-6p in his brief and did not respond to the Commissioner's argument in a reply brief.  Thus, the argument is unrefuted.

Finally, although the ALJ could have done a better job of explaining his reasoning at Step 3, a review of the hearing transcript reveals the ALJ's reasoning on medical equivalence.  For instance, the ALJ responded to a comment from Plaintiff's attorney about whether an emergency room visit is an "equivalent setting" to hospitalization as follows:

> It would be if there was documentation that he was having intravenous, bronchodilator, or antibiotic administration or intensive treatment.  All they're doing is telling him, all right, we'll increase your medications.  They're not really doing pulmonary function studies.  So, I don't interpret that as meeting the requirements of 3.00(C).

(Tr. 31-32; see also Tr. 38). These comments plainly show that the ALJ adequately considered the Step 3 medical equivalency issue and provide a basis for his conclusion that Plaintiff's asthma did not equal Listing 3.03(B). Plaintiff has shown no error in the ALJ's Step 3 finding. Since the finding is supported by substantial evidence, it is entitled to deference and should be affirmed.

### IV.     CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and Plaintiff's Motion for an Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED. Final judgment shall enter in favor of Defendant.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 25, 2010